UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KIRBY and SARAH JEAN KIRBY-GONZALEZ AS CO-TRUSTEES OF WILLIAM WARNER KIRBY 2014 TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T CORP. aka AT&T MOBILITY LLC; and DOES 1-10 inclusive,<br><br>Defendants. | Case No.: 3:21-cv-01680-BEN-BGS<br><br>**ORDER GRANTING AT&T's MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>[ECF No. 15] |

## I.     INTRODUCTION

Before the Court is Defendant AT&T's ("Defendant") Motion to Dismiss.  James Kirby and Sarah Jean Kirby-Gonzalez, as co-trustees of William Warner Kirby's 2014 Trust ("Plaintiffs"), bring their second amended complaint ("SAC") against Defendant AT&T.  Plaintiffs allege that they suffered financial damages following a "SIM card swap" that permitted unknown individuals to access William Kirby's accounts after his

1

death and wrongfully acquire money belonging to the Kirby Trust.[1]  SAC, ECF No. 14. For the reasons set forth below, the Court GRANTS Defendant's motion to dismiss.

## II.     FACTUAL ALLEGATIONS[2]

Plaintiffs' father William W. Kirby ("Decedent"), a prominent physician and politician in the City of Auburn, perished in an aviation accident on April 18, 2020.  SAC at ¶ 11.  The following week, Plaintiffs contacted Defendant AT&T to close Decedent's account.  *Id.* at ¶ 12.  Plaintiffs provided a copy of Decedent's death certificate and paid the final bill.  *Id.*  Defendant confirmed the account was closed at that time.  *Id.*

Shortly thereafter, third parties were able to reopen Decedent's AT&T account and order a new SIM card "and/or related equipment" licensed to that account.  *Id.* at ¶ 13.  In early May of 2020, Plaintiffs noticed continued account activity resulting from this reopening and reported it to Defendant.  *Id.* at ¶ 14.  On May 6, 2020, Defendant responded with a letter stating an investigation revealed someone had indeed reopened the Decedent's account and that "equipment was upgraded without [Plaintiffs'] knowledge."  *Id.* at ¶ 15.  The letter also stated that the unauthorized equipment was removed, and credits would be issued for any charges incurred.  *Id.*  By the time Defendant issued this letter, Plaintiffs allege that third parties had already taken tens of

---

[1] Plaintiffs' second amended complaint contains six claims for relief:
  (1) Remedy under the California Identity Theft Law (Cal. Civ. Code § 1798.92);
  (2) Violation of the California Consumer Records Act (Cal. Civ. Code § 1798.81.5);
  (3) Assisting Unlawful Access to a Computer (Cal. Civ. Code § 502);
  (4) Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200);
  (5) Violation of California Consumer Legal Remedies Act (Cal. Civ. Code § 1750–1784); and
  (6) Negligence (Cal. Civ. Code § 1714).
SAC ¶¶ 49-85.

[2] For the purposes of AT&T's Motion to Dismiss, the Court assumes facts pled in the Second Amended Complaint as true.  *Mazarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court is not making factual findings.

thousands of dollars from Decedent's estate. *Id.* at ¶ 16. Plaintiffs allege these third parties "gain[ed] access to other accounts by providing the [Decedent's] phone number to the entities maintaining them" and that these third parties "open[ed] new accounts." *Id.* at ¶¶ 19, 23.

Plaintiffs subsequently filed a police report with the City of Auburn for the identity theft and provided a copy of this report to Defendant. *Id.* at ¶ 24. Plaintiffs additionally allege that Defendant "continued to pursue claim[s] against the Decedent's account and against Plaintiffs" after receiving notice of the identity theft. *Id.* at ¶ 29.

### III.   LEGAL STANDARD

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable plausible claim. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive a motion to dismiss only if, taking all well pled factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Where a motion to dismiss is granted, leave to amend should be liberally allowed "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.  DISCUSSION

A. <u>Defendant's Motion to Dismiss is Not Waived Under Fed. R. Civ. P. 12(g)(2)</u>

Before addressing the motion to dismiss, Plaintiffs argue that Defendant's right to bring a motion to dismiss has been waived.  The argument is unavailing.  Federal Rule of Civil Procedure 12(g)(2) states:

> "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion…raising a defense or objection that was available to the party but omitted from its earlier motion."

Both parties cite *In re Apple iPhone Antitrust Litigation,* 846 F.3d 313, 317–18 (9th Cir. 2017).  There, the Ninth Circuit noted Rule 1 of the Federal Rules of Civil Procedure directs courts and parties to construe and employ the Rules "to secure the just, speedy, and inexpensive determination" of proceedings.  *In re Apple,* 846 F.3d at 319. The *In re Apple* Court interpreted Rule 1 as a lens through which to apply the other Rules, and accordingly upheld the district court's decision to reach the merits of defendant's previously un-raised standing challenge because it "materially expedited the district court's disposition of the case, which was a benefit to both parties."  *Id*. at 320. The Ninth Circuit adopted the Third and Tenth Circuit's "forgiving" stance on Rule 12(g)(2) when reviewing district courts' entertainment of late filed or successive 12(b)(6) motions.  *Id*. at 319.  The court noted the goal behind Rule 12(g)(2) is to avoid repetitive motion tactics, delay, or tactics designed to ambush the other party.  *Id*. at 318.  Courts often use their discretion to consider new arguments in the interest of judicial economy. *Id.* at 319–20.

As Defendant correctly points out, the first dismissal order was based on an issue of standing.  Although Defendant did raise two other issues under 12(b)(6) in the first motion to dismiss, the first dismissal order did not reach the legal sufficiency of Plaintiffs' claims.  *See* ECF No. 13.  Following *In re Apple*'s logic, this Court finds there is no indication that Defendant brought additional 12(b)(6) challenges in bad faith or to

delay the case.   Declining to reach the merits of Defendant's instant 12(b)(6) motion would delay resolving issues with Plaintiffs' SAC.

Therefore, Defendant's motion to dismiss Counts I, III, IV and VI is not waived. This Court will reach the merits of these issues and turns now to challenges against the respective claims.

B. Claim I, California Identity Theft Law, Cal. Civ. Code § 1798.93.

For their first claim for relief, Plaintiffs seek a remedy under the California Identity Theft Law, Cal. Civ. Code § 1798.93.[3]  Essentially § 1798.93 is intended to be used defensively by victims of identity theft, either as a counterclaim or an individual action against creditors.  *See* Lori J. Parker, *Causes of Action for Identity Theft*, 31 CAUSES OF ACTION 2D § 1, § 14 (last updated Sept. 2022) (describing § 1798.93 as "preventing debt collectors from pursuing collection activities against alleged victims of identity theft…").

The remedies provided under the statute support this reading.  Relief can be granted in the form of a declaration that the victim is not obligated to pay the claim against them or one that voids any security interest obtained from identity fraud.  Cal. Civ. Code § 1798.93(c)(1)-(2).  Victims of identity theft can also seek relief in the form of injunctions restraining claimants from attempting to collect on claims connected with identity theft.  Cal. Civ. Code § 1798.93(c)(3).  A "claimant" under this statute is defined as any person who has a claim for money or property connected with a transaction procured through identity theft.  *See* § 1798.92(a).  For the law to be applicable, two things must be true.  First, a person must be able to show, by a preponderance of the evidence, that they are the victim of identity theft.  *See* 1798.93(b).  Second, the action must be brought against or in relation to a "claimant" as defined under the statute.

---

[3] The law provides: "A person may bring an action against a claimant to establish that the person is a victim of identity theft *in connection with the claimant's claim against that person*."  *See* § 1798.93(a) (emphasis added).

  Here, Plaintiffs plead facts supporting the first prong of the statute, but not the second.  Although Plaintiffs state Defendant is a "claimant" under the meaning of the statue, their factual allegations do not support this conclusion.  Plaintiffs plead that Defendant *formerly* pursued claim(s) against them.  However, the Ninth Circuit has ruled this statute requires the claimant have a *currently existing* claim against the victim of identity theft.  *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1092 (9th Cir. 2008).

  In *Satey*, the plaintiff sued Chase bank and others under § 1798.93 for pursuit of credit card debt that was allegedly incurred due to identity theft.  *Satey*, 521 F.3d at 1090-91.  Chase bank had previously conducted an internal investigation, determined the debt was valid and subsequently sold the debt to third parties.  *Id*.  The other defendants named in the plaintiff's suit were the entities which purchased the debt from Chase bank.  *Id*.  The Ninth Circuit upheld the district court's grant of summary judgment in favor of Chase bank, reasoning the bank did not qualify as a "claimant" under the statute because it had sold its interest in the disputed debt.  *Id*. at 1092-93.  The *Satey* Court explicitly ruled that "claimant" under § 1798.93 requires a *present tense* interest in the disputed debt, and it could not construe "claimant" to include former creditors.  *Id* at 1092.

  The same issue is present here.  In the SAC, Plaintiffs allege Defendant "continued" to pursue claims against the Decedent's AT&T account after receiving proof that identity theft had occurred.  SAC at ¶ 29.  Importantly, Plaintiffs do not plead that Defendant *currently pursues* a claim against them.  Plaintiffs seem to allege the opposite, in that Defendant offered to issue credits for the fraudulent charges.  *Id.* at ¶ 15.  Following *Satey*, Defendant does not meet the definition of "claimant" under the statute.

  Accordingly, this Court GRANTS Defendant's motion to dismiss Count I under Cal. Civ. Code § 1798.93, without prejudice.

C. <u>Factual Sufficiency Challenges to Claims II through V</u>

    1. <u>Factual Sufficiency of Claim II, California Consumer Records Act, Cal. Civ. Code § 1798.81.5</u>

Plaintiffs' second claim for relief alleges Defendant violated Cal. Civ. Code § 1798.81.5 (the California Consumer Records Act ("CRA")). Subsection (b) provides:

> A business that owns, licenses, or maintains *personal information* about a California resident shall implement and maintain *reasonable security procedures* and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure. (Emphasis added).

Defendant argues that Plaintiffs have not pled sufficient facts for the Court to infer that Defendant's security measures were not reasonable. Plaintiffs argue that it is plainly unreasonable to issue a new SIM card to a phone number connected with a customer which the Defendant knew or reasonably should have known was deceased. Formulated into a question, the Plaintiffs would have the Court consider: is the re-opening of an AT&T account belonging to a person known by Defendant to be deceased factually sufficient to infer Defendant's security measures were unreasonable under the CRA? Framed as above, Defendant's actions as alleged plausibly leads to an inference that the security measures were unreasonable.

But, the statute also defines "personal information" as an individual's name combined with one or more data elements. Cal. Civ. Code § 1798.81.5(1)(A). These data elements include a social security number, a driver's license or other government-issued number, an account number that would permit access to an individual's financial account, medical information, etc. Cal. Civ. Code § 1798.81.5(1)(A)(i)-(vii). Exempted from this definition is "publicly available information." Cal. Civ. Code § 1798.81.5(4). Although one might assume Defendant maintained *some kind of* personal information regarding Decedent, Plaintiffs do not plead that the information maintained was protected under this statute. Plaintiffs do plead that Defendant released Decedent's phone number

to the alleged third-party criminals. SAC at ¶ 25. However, a phone number, with nothing more, does not fall into a category of information protected by this statute.

A similar argument was addressed in the case *In re Yahoo! Inc. Customer Data Security Breach Litigation*, where the district court analyzed the 2016 version of the statute. 313 F.Supp. 1113, 1144-45 (2018). Plaintiffs in that case argued that hackers were able to gain access to their email accounts which contained documents with their financial information and social security numbers. *Id*. at 1144. The court reasoned "…Plaintiffs do not argue that Defendants 'own, license, or maintain' the information in Plaintiffs' emails. Rather, Defendants require Plaintiffs to turn over their [personal information], which includes…name, email address, birth date, gender, and zip code." *Id*. at 1145. The court found that the information which would have been covered under the statute was not owned, licensed or maintained by Yahoo!, but the customers themselves. *Id*. The case illustrates the necessity of specific factual allegations regarding the "personal information" maintained by a defendant. The specifics are lacking here.

The Court GRANTS Defendant's motion to dismiss Claim II, without prejudice. [4]

### 2. Factual Sufficiency of Count III (Cal. Penal Code § 502)

Plaintiffs' third claim for relief asserts a violation of California Penal Code § 502(c)(3), alleging Defendant "knowingly and without permission used or caused to be used computer services." Cal. Penal Code § 502(c)(3). Computer services is defined by the statute as "computer time, data processing, or storage functions…or other uses of a computer, computer system, or computer network." Cal. Penal Code § 502(4). To bring

---

[4] Defendant also raises an argument that it is exempt from the CRA due to its regulation by the FCA. Defendant contends the FCA provides "greater" protection and therefore brings Defendant under the exemption outlined in Cal. Civ. Code § 1798.81.5(e)(5). Examining both statutes and FCA regulations, this Court is not convinced that the FCA provides "greater" protection to consumers than the CRA as both statutes provide for "reasonable security measures" and protection against "unauthorized access." *See* Cal. Civ. Code § 1798.81.5, 47 U.S.C. § 222(a) and 47 C.F.R. § 64.2010(a) (2017).

a claim under the statute, the owner of the data must adequately allege that "damage or loss by reason of a violation" of the statute was suffered. Cal. Penal Code § 502(e)(1).

The parties argue over the term "knowingly." Defendant moves to dismiss claiming Plaintiffs have made insufficient conclusory allegations as to Defendant's intent and have failed to plead sufficient facts on which the Court can properly infer the requisite *mens rea*. Plaintiffs contend that they cannot know the "inner workings of AT&T" and to require more specificity would impermissibly heighten the pleading standard.

The use of the word "knowingly" suggests a certain level of culpability higher than ordinary negligence. *Borden v. United States*, 141 S. Ct. 1817, 1823 (2021) ("Purpose and knowledge are the most culpable levels…Recklessness and negligence are less culpable mental states."). To act knowingly is to act with an understanding that a result "is practically certain to follow from his conduct…" *United States v. Bailey*, 444 U.S. 394, 404 (1980) (citations omitted). Plaintiffs have alleged two different states of intent for Defendant. Plaintiffs allege Defendants' actions were done "knowingly and willfully." SAC at ¶ 56. In the next paragraph Plaintiffs also allege Defendant acted "knowingly or with gross reckless disregard for the truth…" *Id.* at ¶ 57. Beyond the fact these are conclusory allegations, the plain language of the statute requires knowing access without permission, not an either/or mental state.

Cases addressing this statute discuss claims tending to fall into two categories: entities extracting information from customers without their knowledge and consent, and accessing a person's computer or online accounts without permission or outside of the scope of permission. *See Mintz v. Mark Bartelstein & Assoc. Inc.*, 906 F. Supp. 2d 1017, 1032 (2012) (defendant gained unauthorized entry into plaintiff's Gmail account); *In re Zoom Video Communications Inc. Privacy Litigation*, 525 F. Supp. 3d 1017 (2021) (class action against Zoom alleging defendant sold personal information of customers); *West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737 (2020) (use of plaintiffs' social media accounts extended beyond the scope of her previously granted permission).

Here, Plaintiffs' factual allegations are insufficient to state a claim. The allegations are too sparse to plausibly allege Defendant's applicable *mens rea* or the nexus between Plaintiff's injury and the alleged violation of this statute. If this claim was brought against the criminals themselves, or an accomplice employee of AT&T, the *mens rea* element of this statute could be more readily inferred. However, as currently pled against Defendant AT&T, it is implausible. Both the knowingly and without permission elements could hinge on the nature of the interaction which initiated the account's reopening. Those facts are absent from the SAC. Assuming *arguendo* that the *mens rea* elements of the statute are adequately pled, still lacking are factual allegations regarding the alleged theft. Plaintiffs' allegations regarding the nature and mechanism of the injury are unclear. One is unable to reasonably infer that any injury was suffered "by reason of a violation" of Cal. Penal Code § 502(c)(3). To be clear, this Court "does not expect Plaintiffs to know all the details of what other parlies [sic], like AT&T or a potential hacker, might have done. However, Plaintiffs are obligated to set forth at least *some* factual allegations…" *Li v. AT&T Mobility*, No. 22-cv-00431-SVW-SP, 2022 WL 3575411 at *5. *Li* categorically dismissed several claims for relief for a similar reason: the factual allegations in the complaint were so sparse that proximate cause could not be established. *Id*. The Plaintiffs allegations in the instant case are like those pled in *Li*.

The Court GRANTS Defendant's motion to dismiss Count III, without prejudice.

   3. <u>Factual Sufficiency of Count IV (Cal. Bus. & Prof. Code § 17200)</u>

Plaintiffs' fourth claim for relief asserts a violation of California's Unfair Competition Law ("UCL"). The UCL prohibits any unlawful, unfair, or fraudulent business acts that are deceptive, untrue, or misleading. *See* Cal. Bus. & Prof. Code § 17200. Here too, a dearth of factual allegations requires the claim for relief be amended or dismissed.

Plaintiffs assert a particular unfair business practice: *i.e.,* "falsely representing the nature of the security measures in place to protect consumer accounts and all aspects therewith associated." SAC at ¶ 63. However, Plaintiffs do not describe *how* Defendant

misrepresented their security measures. The SAC alleges misrepresentation occurred. Plaintiffs allege "[a]t the time of *initially transacting* with Defendants, *Plaintiffs relied* on Defendant's representations that their accounts were secure." *Id.* at ¶ 65 (emphasis added). Yet, the only factual allegation regarding a potential misrepresentation was the confirmation of account closure, which arose from a single interaction at the end of Plaintiffs' business dealings with Defendant. It is unclear then what is meant by the allegation about "initially transacting with Defendants." If Plaintiffs intended to reference misrepresentations made to the decedent during the beginning of his customer-provider relationship with Defendant, they do not make any cognizable factual allegations on this point.

Further, a confirmation that an account was closed does particularly describe or make a representation as to "the nature of security measures in place." *Id.* at ¶ 63. Assuming a re-opening of a decedent's account could lead to the inference that security measures were not reasonable, it does not follow that Defendant affirmatively *misrepresented* its security measures. In attempting to define "fraudulent," Plaintiffs offer conclusory allegations. The SAC alleges that "no reasonable consumer would suspect Defendants would misrepresent the nature of their security measures and that there are effectively none..." *Id.* at ¶ 69. Again, the lack of factual allegations is fatal here as there are sparse misrepresentations regarding Defendant's security measures alleged. Rule 8 demands enough to make a claim plausible.

Finally, Plaintiffs do not adequately state a claim under the "unlawful" prong of the UCL. The SAC states "Defendants' conduct amounts to various violations of California Statutes and Common Law, including without limitation, Common Law Negligence as well as violations of the California Civil Code and Penal Code." *Id.* at ¶ 72. However, when the statutory claims upon which the "unlawful" UCL claim is based fail, so must the UCL claim. "Because Plaintiffs failed to properly plead those predicate claims…they have also failed to plausibly plead their claim under the unlawful prong of the UCL." *Brooks v. Thomson Reuters Corporation*, No. 21-cv-01418-EMC, 2021 WL

3621837 at *5 (N.D. Cal. 2021). The Plaintiffs' claim for violation of the unlawful prong of the UCL fails because the underlying statutory claims on which they base this claim were not pled with sufficient factual support.

The Court GRANTS Defendant's Motion to Dismiss Count IV, without prejudice.

    4.  <u>Motion to Dismiss Count V (Cal. Civ. Codes §§ 1750–1784)</u>

California's Consumer Legal Remedies Act ("CLRA") provides a remedy to consumers who fall victim to unfair or deceptive practices, many of which involve misrepresentation. *See* Cal. Civ. Code § 1770(a)(1)–(23). The SAC alleges that Defendant violated provisions of the CLRA in subsections (1), (7), (9), (14) and (16). The factual allegations are insufficient to plausibly allege violations of each subsection. Plaintiffs inadequately detail how Defendant: (1) passed off goods or services *as those of another*; (7) represented that their goods or service was of a certain particular standard, quality, or grade; (9) advertised goods or services *with intent not to sell them as advertised*; (14) represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; or (16) represented that the subject of a transaction has been supplied when it has not been. All the above assertions are supported by little more than a conclusory recitation of elements to the claim, rather than particular facts that show the claims are plausible.

Regarding subsection (1), Plaintiffs make no allegations that Defendant offered the goods or services of another entity; in fact, some of Plaintiffs claims rely on Defendant's supposed misrepresentation of its *own services and security measures* or its negligent actions in performance of *its own business practice*. Regarding subsection (14), Plaintiffs do not plead that a transaction with the Defendant took place; it is only implied by the existence of Decedent's account with AT&T. Beyond this basic factual deficiency, there is little mention that a right, remedy or obligation was *represented* to Plaintiffs or Decedent regarding Decedent's account. Finally, Plaintiffs' claim under subsection (16) is contradicted by the facts they allege. Even assuming the act of closing

Decedent's account falls under the phrase "subject of a transaction has been supplied," Plaintiffs allege the account *was in fact closed*. SAC at ¶ 13.

Plaintiffs' claims under the remaining subsections relate to a misrepresentation of quality of goods or services (7) and an intent not to offer such goods or services as advertised (9). To state a claim under the CLRA based on a fraudulent misrepresentation theory, the plaintiff must show "actual reliance" on the misrepresentation, and harm. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (citations and internal quotation marks omitted). Reliance must also be shown to state a claim under the CLRA for fraudulent omission. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citation omitted).

In *Ross v. AT&T*, the plaintiff based his CLRA claim for fraudulent misrepresentation on AT&T's general privacy policy. *Ross*, No. 19-cv-06669-JST, 2020 WL 9848766 at *16 (N.D. Cal. 2022). The court dismissed this claim noting that plaintiff did not allege the date he read AT&T's privacy policy, or that he relied on it when deciding to contract with AT&T. *Id*. Plaintiffs' SAC in this case is devoid of similar allegations. Plaintiffs do not include allegations of particular Defendant misrepresentations regarding security measures for its customers. Even assuming the act of Defendant confirming Decedent's account was closed (and implied within this statement is the notion it would remain closed) this is not by itself directly related to representations regarding the quality of Defendant's goods or services. More is required to plausibly allege a claim for relief.

The Court GRANTS Defendant's motion to dismiss Claim V, without prejudice.

D. <u>The Negligence Claim</u>

Plaintiffs' sixth claim for relief asserts Defendant failed to exercise reasonable care in the maintenance of customer information. SAC at ¶ 81. Under California law, "[l]iability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff…" *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 803 (1979) (citation omitted). A duty of care generally arises through statute, contract or common

law principles. *Id*. Even when the parties are not in direct contractual privity, a plaintiff may recover for negligent performance of a contract when a "special relationship" can be shown through a six-factor test. *J'Aire*, 24 Cal.3d at 803 (citing *Biakanja v. Irving*, 49 Cal.2d 647 (1958)).

Plaintiffs argue the duty of care required of Defendant arose from the Consumer Records Act ("CRA") and California Penal Code § 502 *et seq*. As Plaintiffs fail to allege sufficient facts for the Court to infer the applicability of these statutes, their claim for negligence based on a standard of care supposedly created by these statutes similarly fails. Moreover, Plaintiffs do not plead facts sufficient to infer the subscriber contract with the Decedent created a special relationship creating a heightened duty of care under contract. The Court finds the Plaintiffs have not alleged sufficient facts to show Defendant plausibly had a duty of care or that a duty was breached.

The Court GRANTS Defendant's motion to dismiss count VI, without prejudice.

E. <u>Punitive Damages under Cal. Civ. Code § 3345</u>

Cal. Civ. Code § 3345(a) provides:

> This section shall apply only in actions brought by, on behalf of, or for the benefit of senior citizens or disabled persons, as those terms are defined in subdivisions (f) and (g) of Section 1761, to redress unfair or deceptive acts or practices or unfair methods of competition.

First, Plaintiffs argue Defendant failed to utilize the correct vehicle for disposal of this prayer for relief, which they claim is a motion to strike under Federal Rule of Civil Procedure 12(f). However, that is not necessarily the case. Defendant's motion challenges the prayer for punitive damages on the grounds it is precluded as a matter of law. Therefore, Defendant correctly utilizes a motion to dismiss under 12(b)(6) to test the legal sufficiency and applicability of this prayer for damages.

The text of the statute implies the punitive damages are for senior citizens who were victims of deceptive or unfair practices while alive. Cal. Civ. Code § 1761 defines

senior citizen as "a person who is 65 years of age or older." Cal. Civ. Code § 3345(b)(2) further provides:

> Whether the defendant's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

The last clause is illustrative of the purpose of the statute: to be essential to "health or welfare," there is an implied presumption that a person is alive. The other listed factors also require this, such as the ability to maintain a place to live and employment, as well as the ability to engage in "major life activities," such as walking, seeing, or breathing, all of which deceased persons cannot do. *See* § 1761(g)(B)(2). Plaintiffs invoke this statute for themselves. Plaintiffs allege "[a]t all relevant times, *Plaintiffs* were each a senior citizen or disabled person…" SAC ¶ 87 (emphasis added). This is sufficient.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** as outlined below:

1. Counts I – VI, Defendant's motion to dismiss is GRANTED, without prejudice.
2. Defendant's motion to dismiss Plaintiffs' prayer for punitive damages under Cal. Civ. Code § 3345 is DENIED.

Plaintiff may file a Third Amended Complaint within twenty-one (21) days of this order that cures the pleading deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: November 23, 2022

_____
HON. ROGER T. BENITEZ
United States District Judge